IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH PATRICK COPPERSMITH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI, )<br>)<br>Defendant. ) | Civil Action No. 22-26-E |

ORDER

AND NOW, this 8th day of March 2023, the Court, having considered the parties' cross-motions for summary judgment, will grant Defendant's motion. The Administrative Law Judge's ("ALJ") decision denying Plaintiff's application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, is supported by substantial evidence and will be affirmed. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).[1]

---

[1]  Plaintiff has challenged the ALJ's evaluation of the medical opinion and prior administrative medical findings evidence in his record. His argument is that the ALJ failed to support and articulate her persuasiveness determinations for opinions and findings according to the applicable regulatory standard. For the reasons explained herein, the Court is unpersuaded of any error or shortcoming in the ALJ's analysis and will affirm her non-disability determination.

Upon the Appeals Council's denial of Plaintiff's request for review (R. 1), the ALJ's decision became the final decision in this matter. 20 C.F.R. § 404.981. The Court's review of that decision is plenary with respect to legal questions, but the ALJ's findings of fact are subject to the deferential substantial evidence standard. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is oft described as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is not a demanding "threshold for . . . evidentiary sufficiency," *id.*, and ALJs are not required to "use particular language or adhere to a particular format," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); however, the standard is not overly permissive. An ALJ must show how he or she considered probative evidence by providing "a clear and satisfactory explication of the basis on which [the decision] rests." *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981); *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) ("While the ALJ

1

need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning.").

ALJs use a five-step evaluation to determine disability under the Act. 20 C.F.R. § 404.1520. Pursuant thereto, an ALJ asks: "whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work." *Roberts v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009); 20 C.F.R. §§ 404.1520(a)(4)(i)—(v). Before an ALJ addresses the questions presented by steps four and five, the ALJ must first find a claimant's residual functional capacity ("RFC") which is a finding of a claimant's maximum sustained work ability despite limitations arising from medically determinable impairments. 20 C.F.R. §§ 404.1545(a)(1)—(2). It must be "based on all the relevant evidence in [the claimant's] case record." *Id.* § 404.1545(a)(1). When an ALJ considers medical opinions and prior administrative medical findings toward a claimant's RFC, he or she must follow the directives in Section 404.1520c if—as here—the claimant's application was filed on or after March 27, 2017. For opinions and findings evidence, Section 404.1520c directs ALJs to evaluate persuasiveness according to five factors and to specifically address the two most important factors—supportability and consistency—in the analysis that appears in the ALJ's decision. *Id.* §§ 404.1520c(b), (b)(2), (c)(1)—(c)(5).

When the ALJ in this matter conducted the five-step evaluation, she first found Plaintiff had not worked since his alleged onset date. (R. 17). Second, she found Plaintiff had five severe, medically determinable impairments: "chronic kidney disease (Stage 2), chronic kidney stones, degenerative disc disease of the lumbar spine, chondrocostal junction syndrome, and adjustment disorder with anxiety." (*Id.*). At step three, the ALJ found Plaintiff had no presumptively disabling impairments. (R. 18). Having resolved steps one and two, but not step three, in Plaintiff's favor, the ALJ reviewed the evidence to formulate Plaintiff's RFC. To that end, she evaluated opinions offered by Plaintiff's primary care provider, CRNP Stephanie Martuccio (hereinafter "NP Martuccio"). Based on her multi-year treating relationship with Plaintiff, NP Martuccio authored a medical source statement shortly before Plaintiff's hearing. (R. 967—70). NP Martuccio's statement included diagnoses ("Stage 2 kidney failure/chronic kidney stones/anxiety/IBS, GERD, chronic lumbar radiculopathy") and symptoms, findings and signs, and treatment. (R. 967). Her statement also included her responses to questions about Plaintiff's physical limitations. Thereupon, NP Martuccio opined that, if Plaintiff were in a "**competitive work situation**," he "would be at risk of missing multiple days due to ongoing kidney stones." (*Id.*). She further opined that Plaintiff's "flare-ups" would cause him to be "off for 1—4 days" and that his "[l]umbar radiculopathy may flare up at any time." (*Id.*). NP Martuccio added that Plaintiff could only sit for fifteen minutes and stand for ten to fifteen minutes at a time. (R. 968). For sitting and standing/walking totals in a day, NP Martuccio opined Plaintiff's limit would be just two-hours each. (*Id.*). She further opined Plaintiff would need to take unscheduled breaks to accommodate his muscle weakness, fatigue, medication side effects, pain, and frequent urination. (*Id.*). She believed Plaintiff would need to "go home" during flare ups. (*Id.*). She also opined Plaintiff could never climb ladders; would be limited in

2

twisting, stooping, crouching/squatting, and climbing stairs (occasionally); would be off-task 25% or more of the time "during flare ups"; could only do low-stress work because he "deal[t] with anxiety"; and would be absent more than four days monthly. (R. 969). The ALJ found NP Martuccio's statement to be "not persuasive." (R. 23).

The ALJ also evaluated findings from State agency medical/psychological consultants. Dr. Chan Kun Chung opined that Plaintiff could occasionally lift/carry fifty pounds, stand and/or walk for six hours, and sit for six hours daily (R. 22, 81); Dr. Sanjay M. Gandhi opined Plaintiff could occasionally lift twenty-five pounds, frequently lift twenty pounds, and stand and/or walk and sit for six hours daily (R. 22, 98); Dr. Stephen Timchack found Plaintiff could "meet the basic mental demands to complete 1—2 step tasks on a sustained basis" (R. 22, 84); and Dr. Frank Mrykalo similarly opined that Plaintiff was "[n]ot significantly limited" in most mental functioning and that he could "meet the basic mental demands to complete the 1-2 step tasks on a sustained basis despite the limitations resulting from . . . mental health impairment." (R. 22—23, 104—05). The ALJ found the findings offered by Drs. Chung and Gandhi to be persuasive "due to [the doctors'] expertise, their review of the claimant's medical records, and the relative consistency of their opinions with each other and the overall medical evidence." (R. 23). The ALJ further found Dr. Gandhi's findings to be "slightly more persuasive" because he had access to more records than Dr. Chung and because his more restrictive findings were "more consistent with [Plaintiff's] back and kidney stone issues." (*Id.*). The ALJ found the findings of Drs. Timchack and Mrykalo to be persuasive "due to their mental health expertise, their review of the claimant's medical records, and the consistency of their opinions with each other and the longitudinal medical evidence in the record." (*Id.*).

Based on these opinions/findings and her review of other evidence in Plaintiff's record, the ALJ found Plaintiff could "perform less than the full range of light work" such that light work with added limitations were supported by the record. (R. 20). Those added limitations included: carrying twenty pounds occasionally, standing and/or walking six hours and sitting six hours in an eight-hour workday, no exposure to certain hazards or environmental extremes, limitation to low-stress work ("a job with simple, routine work that requires simple workplace decisions, not at production-rate pace"), minimal changes to processes and settings, and occasional interaction with supervisors/co-workers/the public. (R. 20). The ALJ found this RFC would not permit a return to past work, but she further found it and Plaintiff's age, education, and work experience would permit adjustment to other work such that Plaintiff was not disabled under the Act. (R. 24—26).

Plaintiff has argued the ALJ's decision cannot be found to be supported by substantial evidence because of errors in her evaluation of the opinions and findings evidence. His first argument in this regard is that the ALJ erred in finding NP Martuccio's opinions to be not persuasive. This first argument has two parts. The first part of the argument is that the ALJ cherry-picked evidence to support her not-persuasive finding as to NP Martuccio's off-task time and absences limitations, that is, Plaintiff has argued the ALJ selectively disregarded evidence about his kidney problems during the relevant period that supported NP Martuccio's opined

3

limitations. The second part of Plaintiff's first argument is that NP Martuccio's other opinions—*e.g.*, that Plaintiff's total time standing and/or walking in a day would be significantly limited—were dismissed without meaningful consideration of Plaintiff's impairments other than his kidney problems such as degenerative disc disease and anxiety.

The Court is unpersuaded of these alleged deficiencies. Having reviewed the ALJ's decision and the record, the Court is satisfied the ALJ did not cherry-pick evidence to support her not-persuasive finding with respect to NP Martuccio's opinions about his kidney-related limitations. The ALJ explained that NP Martuccio's opinions about work-preclusive off-task time and absences were "inconsistent with the balance of the medical evidence in the record, including physical examination clinical findings" and "good response to ongoing medical treatment" she had discussed earlier in her decision. (R. 23). To support that assessment, the ALJ compared evidence of bad kidney-stone attacks near the end of 2019 with treatment notes in August 2020 showing Plaintiff's condition was "mostly well-controlled" despite having passed three small stones the week prior. (R. 24). The ALJ noted that Plaintiff's condition appeared to be stable in this regard insofar as Plaintiff continued to regularly pass small stones. (*Id.*). This evidence convinced the ALJ that NP Martuccio's off-task and absences limitations were overstated. Plaintiff has contended that this analysis shows no consideration of evidence supporting NP Martuccio's off-task/absences limitations, *e.g.*, evidence showing "treatment nearly every single month throughout the relevant time period" where Plaintiff "continued to complain of pain at every single visit" which Plaintiff has argued corroborated NP Martuccio's indication that Plaintiff had frequent flare-ups lasting one-to-four days. (Doc. No. 10, pg. 13 (citing R. 644, 648, 728, 771, 779, 780, 781, 784, 823, 828, 831, 838, 841, 845, 911, 914, 956, 957)). But this evidence the ALJ is alleged to have overlooked merely shows that between April 2020 and March 2021 Plaintiff was frustrated by pain from kidney stones, experienced pain episodes that may have instead been attributable to muscle strain, had anxiety around passing stones, continued to pass small stones (about three/week), and had no side effects from medications. (R. 644, 771, 781, 784, 823, 828, 831, 838, 914). Such evidence is not contrary to the ALJ's finding that NP Martuccio opined more severe off-task and absences limitations than the record substantiated. Because ALJs are not required to "make reference to every relevant treatment note," *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001), and it was not necessary for the ALJ to reject the evidence cited by Plaintiff to reject NP Martuccio's off-task and absences opinions, the Court rejects Plaintiff's cherry-picking argument.

The Court also rejects Plaintiff's argument that the ALJ failed to consider NP Martuccio's other opined limitations such as her opinion that Plaintiff could only stand and/or walk and sit for relatively short durations. The ALJ's consideration of those other opinions offered by NP Martuccio was briefer than her consideration of the off-task and absences limitations, but the ALJ clearly addressed those opinions and explained their rejection: "while [NP Martuccio] opined that the claimant is able to sit for two hours in an eight-hour workday, stand/walk for two hours in an eight-hour workday, and must shift positions at will—these opinions do not appear consistent with the claimant's conservative treatment for back and joint pain, and they directly contradict the well-supported physician opinions of medical consultants

Dr. Chung and Dr. Gandhi." (R. 24). This explanation shows that the ALJ considered evidence that could have been found to support NP Martuccio's opined limitations, like evidence of Plaintiff's back and joint pain, but ultimately found the record was not fully supportive of NP Martuccio's limitations. The ALJ's review of the record supports her assessment. For example, the ALJ considered that "[o]bjective radiology reports reveal[ed] degenerative changes in [Plaintiff's] lumbar spine as well as various calculus formations in the kidney," but the ALJ further found that Plaintiff's records showed positive response to "conservative treatment modalities, including medication management, activity and dietary modification, physical therapy, and occasional specialist treatment with urologist and nephrologists." (R. 21). That the ALJ could have interpreted evidence like Plaintiff's MRI results showing left neural foraminal stenosis to support "a contrary conclusion" does not mean the ALJ's persuasiveness finding was insufficiently supported. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). For these reasons, the Court is satisfied with the ALJ's evaluation of NP Martuccio's opinions and her persuasiveness determination.

This brings the Court to Plaintiff's second and final challenge to the ALJ's evaluation of the opinion and findings evidence in this matter, which is that the ALJ erroneously relied on the State agency consultants' findings without evaluating supportability and consistency as the regulations require. Plaintiff primarily has argued that the ALJ failed to conduct an adequate evaluation of the consultants' findings because she found their opinions to be consistent with the other evidence and each other without explaining how she came to that conclusion, *i.e.*, without pointing to specific consistencies among their opinions and the record that would bear out a finding that consistency worked in the consultants' favor. The Court is unpersuaded by the argument. The Court reads the ALJ's decision "as a whole." *Jones*, 364 F.3d at 505. Here, the ALJ considered medical records that showed Plaintiff's pain due to kidney stones and degeneration of the lumbar spine responded well to conservative treatment (R. 21 (citing Exhibits 7F—17F)). Among those records were Plaintiff's physical therapy records showing his "progress towards goals [was] good and his tolerance to treatment [was] good." (R. 884, 894, 903, 916). Also therein were records from Plaintiff's treatment with NP Martuccio indicating, *inter alia*, that though Plaintiff continued to pass kidney stones "routinely," "everything else [was] feeling better," and he was taking his prescribed medications without any noted side effects. (R. 938 (describing the status of Plaintiff's kidney disease on February 11, 2021)). The ALJ found this evidence to be consistent with the consultants' findings and the consultants' findings to be consistent with each other, but she explained that she found Dr. Gandhi's findings to be the most persuasive with respect to opinions and findings about Plaintiff's physical limitations because Dr. Gandhi had the opportunity to review Plaintiff's most recent medical records which supported "postural and environmental restrictions more consistent with [Plaintiff's] back and kidney stone issues." (R. 22, 23).

For the psychological consultants' findings, the ALJ's finding of consistency among those findings is borne out by her earlier review of evidence showing Plaintiff "generally responded well to outpatient counseling and psychotropic medication management." (R. 21, 23). Not only that, but the ALJ specifically included limitations in Plaintiff's RFC to accommodate

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED as specified above.

s/ Alan N. Bloch
United States District Judge

ecf:   Counsel of Record

---

his anxiety, like limitation to low-stress jobs with "simple, routine work that requires simple workplace decisions." (R. 20). Because the ALJ's decision in its entirety gives the Court adequate insight into why she found the consultants' findings to be persuasive, the Court will find no defect in the ALJ's evaluation of those findings pursuant to Section 404.1520c. For this and the foregoing reasons, the Court finds the ALJ supported her findings with substantial evidence. And, having found no deficiency of evidence nor error of law in the ALJ's formulation of Plaintiff's RFC, the Court need not address Plaintiff's argument that the hypothetical question posed to the vocational expert at Plaintiff's hearing was inadequate. *Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005) (explaining that challenges to an RFC determination and adequacy of a hypothetical are often the same argument posed two different ways).